UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRISON SNOW KINSLEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UDEMY, INC.,<br><br>　　　　Defendant. | Case No. 19-cv-04334-JSC<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 56 |

　　Harrison Kinsley, a computer programing educator, filed this action alleging that Udemy, Inc. ("Udemy") reproduced and distributed his copyrighted works in violation of the federal Copyright Act and state law.[1]  Before the Court is Udemy's summary judgment motion.  (Dkt. No. 56.)[2]  Udemy contends that no triable issues of material fact exist and that it is protected from Mr. Kinsley's claims under the Copyright Act's safe harbor.  After carefully considering the parties' briefing, the Court concludes that oral argument is not necessary, *see* N.D. Cal. Civ. L.R. 7-1(b), vacates the April 1, 2021 hearing, and GRANTS Udemy's motion.  No reasonable trier of fact could find for Mr. Kinsley on any claim.

**FACTUAL BACKGROUND**

　　Udemy is a technology company that provides third-party individuals, or "instructors," the ability to upload educational content for Udemy users.  (Dkt. No. 57-1 at 4.)  To limit copyright infringement on its site, Udemy requires that instructors agree that their content does not misappropriate or infringe upon another party's intellectual property or impersonate another

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 17.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers placed at the top of the documents.

person, and verify that they have the right to publish or use the content published on Udemy's platform. (Dkt. No. 57-2 at 2.) Before permitting an instructor to post content, Udemy conducts a quality review process, but does not investigate legal issues or possible infringements during this process. (Dkt. No. 56-2 at 2 ¶¶ 7-9.) However, if a user identifies content posted on Udemy's platform as infringing on a third party's copyright, Udemy has processes and procedures whereby that user may report the infringement. (Dkt. No. 57-16.)

To help identify possible infringements, Udemy allows users to see "free previews" of each course. (Dkt. No. 56-2 at 3 ¶ 15.) If after investigating a reported infringement Udemy determines the content has infringed on another copyright, Udemy removes the course and makes it unavailable to users, including those who previously purchased the course. (Dkt. Nos. 57-1 at 11, 56-2 at 3 ¶ 14.) Udemy also has a repeat infringer policy—if an instructor infringes on copyrighted material or is a risk of multiple infringements, it may ban the instructor's account— but Udemy cannot automatically scan its platform for potential infringements. (Dkt. Nos. 57-5, 56-2 at 2 ¶ 11.) In light of this limitation, Udemy uses a vendor that runs searches to identify potentially infringing material elsewhere on the internet. (*Id.* at 4 ¶ 26.)

Mr. Kinsley alleges that two of his courses, Mastery Python 3 Basics Tutorial Series + SQLite with Python ("Mastery Python 3") and OpenCV with Python for Image and Video Analysis – Hands On! ("OpenCV"), were uploaded to Udemy's platform and infringed upon his copyrights. Mastery Python 3 was uploaded to Udemy on January 5, 2018. (Dkt. No. 57-8.) On January 13, 2018, Mr. Kinsley notified Udemy that the uploaded Master Python 3 course was infringing on his copyrights. (Dkt. No. 57-9 at 7.) Udemy removed the course material on January 16, 2018 and banned the instructor's account. (Dkt. Nos. 57-9 at 7, 56-2 at 4 ¶ 30.) OpenCV course material was uploaded to Udemy on May 10, 2018. (Dkt. No. 57-10.) Mr. Kinsley submitted a copyright complaint regarding the OpenCV material on June 20, 2018; Udemy removed the material the same day, and subsequently banned the posting instructor. (Dkt. Nos. 57-9 at 7, 56-2 at 4 ¶ 31.)

## DISCUSSION

Udemy moves for summary judgment on Mr. Kinsley's copyright claims because Udemy

falls within 17 U.S.C. § 512's safe harbor. Udemy additionally argues that summary judgment is appropriate on Mr. Kinsley's non-copyright claims because they are preempted under the Copyright Act and, even if they are not preempted, that undisputed evidence shows Udemy is nonetheless entitled to summary judgment. Furthermore, Udemy's argument goes, Mr. Kinsley cannot survive summary judgment because he has no right to any damages.

## I. Copyright Claims

"Title II of the [Digital Millennium Copyright Act], set forth in 17 U.S.C. § 512, 'protects qualifying Internet service providers from liability for all monetary relief for direct, vicarious and contributory infringement.'" *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1088 (C.D. Cal. 2001) (quoting S. Rep. 105–190, at 20 (105th Congress, 2d Session 1998)); *see also Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("Congress opted to leave current law in its evolving state and, instead, to create [with 17 U.S.C. § 512] series of safe harbors, for certain common activities of service providers.") (internal quotation marks and citations omitted). The safe harbor set forth in § 512(c) applies where a plaintiff seeks to hold an internet service provider liable for either: (1) infringing "material" stored and displayed on the service provider's website or (2) infringing "activity using the material on the [service provider's computer] system." *See* 17 U.S.C. § 512(c)(1)(A)(i). Udemy contends that it satisfies the safe harbor's requirements and falls within its ambit, and therefore summary judgment is appropriate on Mr. Kinsley's copyright claims. The Court agrees.

### A. Safe Harbor Threshold Requirements

As a threshold matter, § 512(c) applies only to "service provider[s.]" 17 U.S.C. § 512(c)(1). A "service provider" is a "provider of online services or network access, or the operator of facilities" for these services. 17 U.S.C. § 512(k)(1)(B). Every reasonable trier of fact would find that Udemy is a service provider as defined under § 512(k)(1). It provides online services to its users in the form of its courses and, moreover, Mr. Kinsley does not dispute that Udemy is a service provider. *See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1015 n.4 (9th Cir. 2013) (determining that entity was a "service provider" in analysis of its safe harbor eligibility because appellant "[did] not contend otherwise"). Udemy also has a

"designated agent" to receive notifications of claimed infringement as required under 17 U.S.C. § 512(c)(2). (Dkt. No. 57-4 at 6-7.)

"To be eligible for any [safe harbor] limitations of liability, a service provider must meet [§ 512(i)'s] conditions[.]" *Ellison*, 357 F.3d at 1080 (citation omitted). Section 512(i)(1)(A) requires that a service provider "adopt[] and reasonably implement[] and inform[] subscribers and account holders of [its] policy that provides for" the termination of "subscribers and account holders . . . who are repeat infringers[.]" *See also Ellison*, 357 F.3d at 1080. Udemy satisfies this requirement. Its "Instructor Copyright Ban Policy" bans instructor accounts where an instructor "represents a high risk of additional infringements," and presumes a "high risk of additional infringement . . . when there has either been a material violation [of the policy], cases of impersonation, and repeated non-material violations." (Dkt. No. 57-5 at 2.) The policy lays out Udemy's consequences for copyright infringement and its investigative processes regarding possible infringements and has been in place since 2015. (Dkt. Nos. 57-5 at 2, 56-2 at 3 ¶ 24.) Udemy's "Intellectual Property Policy" also informs its users that any instructor deemed to be a "repeat infringer" shall have their courses removed. (Dkt. No. 56-4 at 2.) These documents clearly "inform subscribers of [Udemy's] policy of terminating repeat infringers in appropriate circumstances." *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 615–16 (9th Cir. 2018) (internal quotation marks omitted). Furthermore, Udemy terminated the accounts of the instructors who posted the content infringing on Mr. Kinsley's copyrights. (Dkt. No. 56-2 at 4 ¶¶ 30-31.)

Second, § 512(i)(1)(B) requires that a service provider "accommodate[] and [] not interfere with standard technical measures." "Standard technical measures" are defined as "technical measures that are used by copyright owners to identify or protect copyrighted works[.]" 17 U.S.C. § 512(i)(2). There is nothing in the record to indicate that Udemy interfered with any measures that its customers or instructors could use to identify or protect copyrighted works; in fact, their policies accommodated protective measures to stop infringing activity, and permitted users to see "free previews" of courses and report potentially infringing courses and works. (Dkt. No. 56-2 at 3 ¶¶ 15-18, 20-22.) In opposition, Mr. Kinsley argues that Udemy does not meet § 512(i)'s

requirements because it waited until after he filed this lawsuit to ban the infringing instructors. (Dkt. No. 66 at 3.) This alleged delay, however, does not change that Udemy had policies in place—and informed its instructors of these policies—that complied with § 512(i)(1)(A) before Mr. Kinsley notified Udemy of the infringing courses or filed this action. Accordingly, Udemy satisfies § 512(i)'s conditions to be eligible for "safe harbor limitations of liability." *Ellison*, 357 F.3d at 1080.

### B. Safe Harbor & 17 U.S.C. § 512(c)

After satisfying § 512(i)'s requirements, a service provider must satisfy the requirements of § 512(c) to enjoy its safe harbor's protections.

Under § 512(c)(1), a service provider must have no "actual knowledge that the material" or activity using the material on its system is infringing, or "in the absence of actual knowledge" it must be "unaware of facts or circumstances from which infringing activity is apparent[.]" If the service provider does not acquire actual or apparent knowledge, "upon obtaining such knowledge or awareness" the service provider must act "expeditiously to remove" or disable access to the material. 17 U.S.C. § 512(c)(1)(A)(iii). Second, "in a case in which the service provider has the right and ability to control" infringing activity it must "not receive a financial benefit directly attributable to the infringing activity[.]" *Id.* at § 512(c)(1)(B). Finally, pursuant to § 512(c)(1)(C), "upon notification of claimed infringement[,]" a service provider must "respond[] expeditiously to remove[] or disable access to" the allegedly infringing material.

#### 1. 17 U.S.C. § 512(c)(1)(A)

Regarding the requirements set forth in § 512(c)(1)(A), "actual knowledge" means "knowledge that is actual, not merely a possible inference from ambiguous circumstances." *Ventura Content*, 885 F.3d at 609. Udemy received Mr. Kinsley's copyright complaints concerning the Mastery Python 3 class on January 13, 2018, and the OpenCV class on June 20, 2018. (Dkt. No. 57-9 at 7.) There is nothing in the record to indicate—and Mr. Kinsley proffers no evidence to suggest—that Udemy had actual knowledge regarding the alleged infringements prior to these dates. *See Ventura Content*, 885 F.3d at 609; *see also UMG Recordings*, 718 F.3d at 1021 ("[I]f merely hosting material that falls within a category of content capable of copyright

5

1    protection, with the general knowledge that one's services could be used to share unauthorized
2    copies of copyrighted material, was sufficient to impute knowledge to service providers, the §
3    512(c) safe harbor would be rendered a dead letter[.]").

4    Regarding a service provider's "red flag" knowledge, § 512(c)(1)(A)(ii) "turns on whether
5    the provider was subjectively aware of facts that would have made the specific infringement
6    objectively obvious to a reasonable person." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d
7    1020, 1043 (9th Cir. 2013) (internal quotation marks and citation omitted); *see also Ventura*
8    *Content*, 885 F.3d at 610 ("And for red flag knowledge, infringement must be apparent, not
9    merely suspicious."). Nothing in the record supports a finding that Udemy was aware of facts that
10   would have made the infringements at issue "objectively obvious to a reasonable person." *Fung*,
11   710 F.3d at 1043.

12   Mr. Kinsley's declaration—the only evidence he offers in opposition to Udemy's motion
13   for summary judgment—does not create a genuine dispute of material fact on these elements.
14   First, he asserts that Udemy "had red flag knowledge of [his] specific courses but failed to act
15   upon" this knowledge. (Dkt. No. 66-1 at 2 ¶ 8.) "When the nonmoving party relies only on its
16   own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported
17   by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th
18   Cir. 1993) (per curiam) (citations omitted); *see also United States v. 1 Parcel of Real Prop., Lot 4,*
19   *Block 5 of Eaton Acres*, 904 F.2d 487, 492 n.4 (9th Cir. 1990) ("Conclusory allegations
20   unsupported by factual data will not create a triable issue of fact."); *Lujan v. Nat'l Wildlife Fed'n*,
21   497 U.S. 871, 888 (1990) (determining that "conclusory allegations of an affidavit" are
22   insufficient under Rule 56 to create a "genuine issue" for trial) (citing *Anderson v. Liberty Lobby,*
23   *Inc.*, 477 U.S. 242, 249 (1986)); *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017)
24   ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts
25   are not enough to stave off summary judgment.") (internal quotation marks and citation omitted).
26   Accordingly, Mr. Kinsley's statement regarding Udemy's "red flag" knowledge is insufficient to
27   create a triable issue of material fact in opposition to Udemy's motion and evidence supporting the
28   motion.

6

Second, Mr. Kinsley declares that the infringing content was still available in Udemy's marketplace "as of March 2020." (Dkt. No. 66-1 at ¶¶ 5, 9.) He thus implies that Udemy, having obtained actual knowledge of the infringement, failed to act "expeditiously to remove" or disable access to the material. 17 U.S.C. § 512(c)(1)(A)(iii). The admissible summary judgment record does not support that finding. Federal Rule of Civil Procedure 56(c)(4) states the "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). While "Rule 56(e)'s requirements of personal knowledge and competence to testify" may be inferred from a declaration itself, *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990), there is nothing in his declaration that satisfies those requirements. How does Mr. Kinsley have personal knowledge that his courses were for sale on Udemy's website until March 2020? Did he observe them himself, obtain discovery from Udemy (although none is submitted in opposition to summary judgment), or learn of it from his counsel or someone else? Without some factual showing of his personal knowledge of the website's content during that period his declaration statement is inadmissible. *See Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). Accordingly, nothing admissible in the record disputes Udemy's evidence that it removed the infringing content and that the courses' material was made unavailable to those users who had already purchased the material. (Dkt. Nos. 57-9 at 6-7.)

Third, Mr. Kinsley asserts that Udemy's document production shows that it did not ban the instructors who uploaded the infringing material from its website until September 2019. (Dkt. No. 66-1 at 2 ¶ 7.) Mr. Kinsley, however, does not identify the documents, what they say, or attach them to his opposition. Udemy, however, also does not offer any evidence as to exactly when it banned the infringing instructors. Nonetheless, assuming Udemy did not ban them until September 2019, such a fact is immaterial to Udemy's safe harbor defense given that the record is undisputed that the material infringing Mr. Kinsley's copyright was removed within days of Mr. Kinsley notifying Udemy of its use and there is no evidence that the infringing instructors subsequently uploaded any additional infringing material.

7

### 2. 17 U.S.C. § 512(c)(1)(B)

Where a "service provider has the right and ability to control" infringing activity it must "not receive a financial benefit directly attributable to the infringing activity" in order to qualify for safe harbor protection. 17 U.S.C. § 512(c)(1)(B). The "right and ability to control" involves "something more than merely having the general ability to locate infringing material and terminate users' access." *Fung*, 710 F.3d at 1045 (internal quotation marks and citation omitted). Instead, a service provider must "exert[] substantial influence over its users' activities." *Id.* (citation omitted). For instance, a service provider has the "right and ability to control infringing activity" where it "t[ells] its users what to upload . . . or curate[s] uploaded content in any meaningful way[.]" *Ventura Content*, 885 F.3d at 613.

Here, Udemy has over 50,000 courses on its marketplace, and its ability to remove infringing content once notified does not create the "right and ability to control" that § 512 contemplates. (Dkt. Nos. 57-4, 57-16 at 2.) *See Fung*, 710 F.3d at 1045. In this case, instructors—not Udemy—uploaded the content at issue, and Udemy did not control the instructors' actions or have any prior knowledge that the content infringed on Mr. Kinsley's copyrights. (Dkt. No. 57-9 at 6.) Udemy automatically uploads content at instructors' requests. (*Id.*) As such, the record shows that Udemy had only the "general ability to locate infringing material," *Fung*, 710 F.3d at 1045, and did not exert the type of control over its instructors' conduct that rises to the level of a "substantial influence," *Ventura Content*, 885 F.3d at 613.

Mr. Kinsley's argument that Udemy had the "right to control the infringing activity" because it used a software program called Link Busters to "detect other instances of the same material" and that therefore it had "the practical ability to prevent this infringing material from going live on its website" is unavailing. (Dkt. No. 66 at 5.) The admissible summary judgment record shows that Udemy did not have the "technological ability to automatedly scan" its platform for potentially infringing content, and that Link Busters "[did] not run against Udemy's platform." (Dkt. No. 56-2 at 4 ¶¶ 26, 28.) Mr. Kinsley's declaration statement that it is his "understanding" that Pirashield provides exactly that service for Udemy (Dkt. No. 66-1 at ¶ 6), does not create a genuine dispute of material fact as there is nothing in his declaration that demonstrates he has

competent, personal knowledge of what Pirashield does for Udemy. As such, based on the admissible record nothing shows that Udemy exercised a "substantial influence" over its instructors' conduct. *See Ventura Content*, 885 F.3d at 613.

Accordingly, Udemy did not have the "right and ability" to control the infringing conduct, and the Court need not address whether Udemy received a direct financial benefit. *See Ellison*, 357 F.3d at 1079 n.10; *CCBill*, 488 F.3d at 1117 (noting that a service provider does not qualify for § 512(c)'s safe harbor where it receives a direct financial benefit "from the infringing activity *if* the service provider also has the right and ability to control [the activity]") (emphasis added).

### 3. 17 U.S.C. § 512(c)(1)(C)

Finally, there is no genuine dispute that, once notified, Udemy expeditiously removed the allegedly infringing material. *See* 17 U.S.C. § 512(c)(1)(C). Udemy received Mr. Kinsley's copyright complaints concerning the Mastery Python 3 class on January 13, 2018, and the OpenCV class on June 20, 2018. (Dkt. No. 57-9 at 7.) It removed the Master Python 3 class materials on January 16, 2018, three days following Mr. Kinsley's complaint, and the OpenCV class materials on June 20, 2018—the same day that Mr. Kinsley notified Udemy and registered his complaint. (*Id.*) Mr. Kinsley's argument to the contrary is supported solely by his declaration lacking personal knowledge, and as discussed *supra* his declaration does not create a triable issue of material fact regarding the timeliness of Udemy's response to his copyright complaints. *See, e.g.*, *Hansen*, 7 F.3d at 138.

Courts have determined that response times to remove infringing material from entities' websites or systems ranging from 5 to 14 days are expeditious. *See Seide v. Level-(1) Glob. Sols., LLC*, No. 16 C 2975, 2016 WL 4206076, at *5 n.5 (N.D. Ill. Aug. 10, 2016) (collecting cases). While the Ninth Circuit has set no rule or standard governing what constitutes expeditiousness in this context, the Court has no difficulty concluding that Udemy's responses to Mr. Kinsey's copyrights complaints—one within 3 days, the other on the same day—were expeditious.

\* \* \*

For the reasons stated above, Udemy satisfies the requirements necessary to qualify for 17 U.S.C. § 512(c)'s safe harbor protections as a matter of law. As such, it is not "liable for

9

monetary relief." 17 U.S.C. § 512(c)(1). Moreover, because Udemy has removed the infringing content from its marketplace, there is no injunctive relief to which Mr. Kinsley is entitled—fundamentally, there is no content Udemy can be enjoined to remove because it has already removed the infringing content and banned the account of the infringing instructors. (Dkt. No. 56-2 at 4 ¶¶ 30-31.) Accordingly, any relief available under 17 U.S.C. § 512(j) is moot. Furthermore, because Udemy is protected under § 512(c)'s safe harbor, it cannot be held liable for Mr. Kinsley's claims for contributory and vicarious copyright infringement. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007) ("[T]he limitations on liability contained in 17 U.S.C. § 512 protect secondary infringers as well as direct infringers.") (citation omitted). For these reasons, even drawing all inferences in Mr. Kinsley's favor, *see Tolan v. Cotton*, 572 U.S. 650, 657 (2014), no reasonable trier of fact could find in favor of Mr. Kinsley, *see Anderson*, 477 U.S. at 248.

## II. Non-Copyright Claims

Mr. Kinsley brings additional claims for misappropriation of the right of publicity, unfair competition and false advertising under California's Unfair Competition Law ("UCL"), receipt of stolen property, unjust enrichment, unfair and unlawful business practices, aiding and abetting, accounting, and declaratory relief. (*See* Dkt. No. 1.) Udemy argues that—because it is protected under § 512(c)'s safe harbor—that Mr. Kinsley's non-copyright claims are preempted by the Copyright Act, and therefore summary judgment on those claims is appropriate. The Court agrees.

Mr. Kinsley brings his first claim for copyright infringement under the Copyright Act. (Dkt. No. 1 at 18 ¶ 51.) A state law claim is preempted under the Copyright Act where the claim's "subject matter . . . falls within the subject matter of [the Copyright Act]," and "the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106[.]" *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137–38 (9th Cir. 2006) (internal quotation marks and citations omitted); *see also Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998). "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights," and the state claim "must have an extra element which changes the

10

nature of the action." *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987), *abrogated on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (internal quotation marks and citations omitted). This inquiry requires a court to "examine the nature" of a plaintiff's state law claim "to discern what rights [the plaintiff] seeks to enforce with state law," and whether a complaint "expressly bases" its state law claims on "rights granted by the Copyright Act." *Kodadek*, 152 F.3d at 1212; *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001) ("[A court] should engage in a fact-specific inquiry into the *actual* allegations underlying the claims at issue in the case" in order to determine whether the "gravamen of the state law claim is the same as the rights protected by the Copyright Act.") (original emphasis).

The first preemption prong is satisfied for all of Mr. Kinsley's non-copyright claims: his course material and videos fall within the subject matter of the Copyright Act. *See* 17 U.S.C. § 102(a)(6)-(7). The remainder of Mr. Kinsley's non-copyright claims "repeat[] and incorporate[] by reference" all preceding allegations in the complaint. (Dkt. No. 1 ¶¶ 66, 72, 77, 88, 92, 102, 104.) Mr. Kinsley's misappropriation claim's allegation that his "copyrighted works embody images of himself," that he is the "exclusive proprietor of his rights of publicity" in his creative works, and that Udemy used his "name and likeness . . . to their commercial advantage" also mirror the allegations in his copyright claim: Mr. Kinsley is the producer and owner of the copyrighted audiovisual and textual works sold by Udemy, and Udemy produced and distributed his copyrighted works from which it derives "direct monetary gain." (*Id.* at ¶¶ 46-47, 52, 67.)

The Copyright Act grants an owner the exclusive rights to reproduce and copy the copyrighted work; prepare derivative works based on the copyrighted work; and to distribute and sell copies of the work. *See* 17 U.S.C. § 106. Mr. Kinsley's misappropriation claim is based on his right to exclusively own and control the reproduction and publication of his works. (Dkt. No. 1 at 20 ¶¶ 66-67.) Where a party's complaint allegations for a state law claim incorporate the same allegations in the party's Copyright Act claim and are based on rights granted by the Copyright Act, the claim is preempted. *See Kodadek*, 152 F.3d at 1209. Here, Mr. Kinsley's misappropriation allegations incorporate and mirror his Copyright Act allegations and are "based

11

solely on rights granted by the Copyright Act." (Dkt. No. 1 at 20 ¶ 66-67.) *Kodadek*, 152 F.3d at 1209; *see also Del Madera Properties*, 820 F.2d at 977 (finding that an unfair competition law claim was preempted under the Copyright Act where the plaintiff's "ownership of th[e] material, and the alleged misappropriation by the defendants, [was] part and parcel of the copyright claim" because the claims both concerned "documents [that] belonged to [the plaintiff] and were misappropriated by the defendants"). Accordingly, Mr. Kinsley's misappropriation claim is preempted, and the Court need not analyze any evidence in the record concerning specific elements of common law misappropriation or misappropriation under Cal. Civ. Code § 3344. *See Laws*, 448 F.3d at 1144 ("Although the elements of [the plaintiff's] state law claims may not be identical to the elements in a copyright action, the underlying nature of [the] state law claims is part and parcel of a copyright claim.") (citation omitted).

Mr. Kinsley's remaining claims fare no better. As with Mr. Kinsley's misappropriation claim, they incorporate all previous allegations in the complaint. (Dkt. No. 1 ¶¶ 72, 77, 88, 92, 102, 104.) The bases for the UCL claims are rights granted by the Copyright Act, *see Kodadek*, 152 F.3d at 1212, and additional allegations that Udemy "refus[ed] to remit revenues" earned from the infringing content do not make this claim "qualitatively different" from Mr. Kinsley's copyright claims—in fact, Mr. Kinsley alleges that Udemy's conduct springs from its sale of his copyrighted material. (Dkt. No. 1 at 21 ¶ 73.) *See, e.g., Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1020 (9th Cir. 2017) (finding that the plaintiff's UCL claim was "derivative" from the Copyright Act claim and preempted because it was not "qualitatively different"). For this reason Mr. Kinsley's UCL claim is preempted. *See Laws*, 448 F.3d at 1144.[3] So too with Mr. Kinsley's stolen property and unjust enrichment claims: while they contain new allegations regarding Udemy's sale of stolen copyrighted material, these allegations do not change the fundamental rights on which Mr. Kinsely's claims are based. (Dkt. No. 1 at 22-24 ¶¶ 79-80, 89.) *See Laws*, 448 F.3d at 1144; *Kodadek*, 152 F.3d at 1212.

---

[3] As explained *supra*, any injunctive relief otherwise available under the statute for Mr. Kinsley's UCL claim and eighth claim for unfair and unlawful business practices is moot. *See* 17 U.S.C. § 512(j).

\* \* \*

At bottom, Mr. Kinsley's remaining non-copyright claims incorporate the allegations that satisfy the preemption requirements, and their varying elements do not alter the claims' "underlying nature." *Laws*, 448 F.3d at 1144.[4] Accordingly, the claims are preempted under the Copyright Act, and therefore the Court need not address Udemy's argument that it is entitled to summary judgment on Mr. Kinsley's non-copyright claims "absent preemption" or because Mr. Kinsley has no right to any damages. (Dkt. No. 56 at 27, 30.)

## CONCLUSION

For the reasons set forth above, Udemy's summary judgment motion is GRANTED. Udemy is protected from Mr. Kinsley's copyright claims under 17 U.S.C. § 512(c)'s safe harbor provision, and his non-copyright claims are preempted under the Copyright Act. Genuine issues of material fact do not exist, *see Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986) and no reasonable trier of fact could find for Mr. Kinsey on any claim, *see Anderson*, 477 U.S. at 248. Judgment must be entered in favor of Udemy and against Mr. Kinsey. Furthermore, the Court GRANTS Udemy's administrative motion to seal because it is narrowly tailored. *See* N.D. Cal. Civ. L.R. 79-5(b).

This Order disposes of Dkt. Nos. 55 & 56.

**IT IS SO ORDERED.**

Dated: March 31, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[4] Because all non-copyright claims are preempted, the Court need not address Udemy's argument that some claims fail for the additional reason that they are not independent causes of action. (Dkt. No. 56 at 29.)